GOLUBSKI ET AL., APPELLANTS, *v.* BOARD OF EMBALMERS & FUNERAL DIRECTORS OF OHIO, APPELLEE.*

*Motion to certify the record overruled, October 4, 1961.

112

(No. 6488—Decided April 11, 1961.)

*Mr. Charles T. Kaps* and *Mr. Thomas LaMarca*, for appellants.

*Mr. Mark McElroy*, attorney general, and *Mr. Vatro J. Grill*, for appellee.

BRYANT, J.   Joseph Golubski and 17 other licensed funeral directors have appealed to this court on questions of law from a judgment of the Court of Common Pleas of Franklin County affirming the actions taken by the Ohio Board of Embalmers and Funeral Directors with reference to the adoption by that board of a rule forbidding the serving of foodstuffs of any kind or character or alcoholic beverages to the public at a funeral establishment in connection with any funeral.

The board's action was taken following a public hearing which the board conducted in Columbus with reference to such rule, and the questions before this court are whether the court below was correct in holding that the board adhered to and followed the provisions of law governing the adoption of rules and whether the court below was correct in holding that the rule as adopted was reasonable and proper and within the scope and powers of the said board.

Not before this court are such questions of policy as whether such a rule is desirable or necessary, all of which involve decisions and determinations which we are not called upon to make.   The record in this case indicates that a few establishments make available food service facilities and an even smaller number furnish anything edible, usually a hot beverage such as coffee or tea along with cookies or doughnuts.

No witness, whose testimony is in the record, said he furnished alcoholic beverages of any kind or character, although the chairman of the board said he had received letters indicating that such beverages had been consumed by those in attendance at some funerals.

It appears that the board, after considering the matter for many months, decided that action was called for, and, although the record does not disclose who did so, a series of amendments or additions to the board rules governing licensed embalmers and funeral directors was drawn up, a hearing was set for May 18, 1959, and legal notice of the intention to adopt such rules and the date and place of a hearing thereon was published on April 16, 1959.

The hearing was set for 2:30 p. m. on May 18, 1959, and although it appeared to attract quite a number of persons affected by it or their representatives it was brought to a close at 4:30 p. m. the same day.

Four changes or additions to the rules were mentioned in the legal notice, were read by the board secretary and were certified to the Secretary of State as having been finally adopted. Only one of them, the fourth, is directly involved in this appeal. The proposals were set forth in the legal notice and, at the outset of the public hearing, were read by the secretary of the board as follows:

"A synopsis of the proposed new rules and of the amendments and rules to be rescinded are as follows:

"Article XII Paragraph 1 amended to read as follows:

" 'All branch establishments shall have a preparation room as specified by the rules of the board in Article XI.'

"Article XV Paragraph 2 amended to read as follows:

" '2. The following shall constitute unprofessional conduct in accordance with Section 4717.08 of the Revised Code.'

"Article XV Paragraph 4 changed numerically to paragraph '5.'

"Article XV Paragraph 4 to read as follows:

" 'In the interest of safeguarding public health, safety, welfare and sanitation, and to promote the ethical business and professional standards of funeral service, the serving of food and/or alcoholic beverages to the public in connection, or in conjunction with any part of funeral service operations in a funeral establishment is prohibited. For the purpose of this regulation, coffee, tea and non-alcoholic beverages shall not be considered food.' "

Proponents of the fourth proposal claimed it was favored by the state and national organizations of funeral directors, that it was desirable from a health standpoint and that the practice was growing and, if unchecked, either would be an increased burden on funeral directors or would increase the cost of funerals. As precedents, they cited similar provisions in regulations adopted by state boards of health in two states, New York and New Jersey, and a provision of state law enacted by the Pennsylvania Legislature.

Opponents of the proposal contended that the fourth proposal would interfere with the customs and practices of certain nationality groups, cited the provisions of Section 4717.10 of the Revised Code, that the provisions of Chapter 4717 of the Revised Code, "Embalmers and Funeral Directors," "do not pre-

vent or interfere with the ceremonies, customs, religious rights'' or ''prevent or interfere with the conducting of funerals * * * in accordance with such ceremonies or rights,'' and contended that the fourth proposal was contrary to that provision of Chapter 4717, *supra.*

On June 10, 1959 the board, by letter addressed to the Secretary of State over the signature of the board's secretary, wrote as follows:

''I hereby certify that the following schedule of new Rules and Regulations with the recissions [rescissions] of, and amendments to certain existing Rules and Regulations of the Board of Embalmers and Funeral Directors were adopted at the regular meeting of said board held in the board office, room 905 Wyandotte Building, 21 West Broad Street, Columbus, Ohio, under date of June 10, 1959:

''Article XII Paragraph 1 amended to read as follows:

'' 'All branch establishments shall have a preparation room as specified by the rules and regulations of the board in Article XI.'

''Article XV Paragraph 2 amended to read as follows:

'' '2. The following shall constitute unprofessional conduct in accordance with Section 4717.08 of the Revised Code.'

''Article XV Paragraph 4 changed numerically to paragraph '5.'

''Article XV Paragraph 4 to read as follows:

'' 'In the interest of safeguarding public health, safety, welfare and sanitation, and to promote the ethical business and professional standards of funeral service, the serving of food and/or alcoholic beverages to the public in connection, or in conjunction, with any part of funeral service operations in a funeral establishment is prohibited. For the purpose of this regulation, coffee, tea and non-alcoholic beverages shall not be considered food.'

''This action was taken under the provisions of Section 4717.04 of the Revised Code.

''Very truly yours,'' etc.

Notices of appeal on questions of law were filed with the board and with the Common Pleas Court of Franklin County, Ohio, and shortly thereafter the board filed a document consisting of 21 typewritten pages, labeled ''Proceedings'' before

the board on May 18, 1959, with reference to the four proposed changes in rules. It appears to be a stenographic transcript of testimony at the hearing but is completely lacking in any certification or verification of any sort either by the chairman, secretary or any board member, and not even the stenographer's name is attached.

In the Common Pleas Court, a decision was handed down overruling all the objections of the appellants and sustaining all the actions of the board but without giving notice to the appellants or giving them a hearing. When the appellants objected that they had not been given a hearing, the matter was reopened by the court, a hearing was held at which no evidence was admitted, and after arguments by counsel the court below reaffirmed and readopted its prior written opinion.

Golubski and the other appellants have assigned two errors as follows:

"1. The Common Pleas Court erred in its judgment that the Board of Embalmers and Funeral Directors of Ohio in adopting the rule concerned in this appeal, had complied with the procedural requirements as provided by law in the adoption of such rule.

"2. The Common Pleas Court erred in its judgment that the rule was reasonable and lawful."

In support of its contention that the board failed to comply with the provisions of law in adopting the rule against the serving of food, etc., and that the court below erred in holding that they did, counsel for the appellants argue that the board is required to follow the provisions of Chapter 119 of the Revised Code, "Administrative Procedure," and that the board failed to comply with the provisions of Section 119.03 (D), Revised Code, that "no rule shall be amended except by a new rule which shall contain the entire rule as amended, and shall repeal the rule amended."

Counsel for the board contend that the appellants did not specifically raise in the court below the question as to the legal sufficiency of the procedural steps taken by the board, with the result that it now is too late to raise such questions, and, further, that even if the question of procedure had been raised in the court below the provision of law relied on by appellants refers to amendments, whereas the proposal under attack (for-

bidding the serving of food, alcoholic beverages, etc.) is a new rule.

There can be no serious question that the board is governed by the provisions of the Administrative Procedure Act, Chapter 119, *supra*. While Section 4717.04 of the Revised Code, relating to embalmers and funeral directors, provides that "The board shall make and adopt rules, regulations, and bylaws for its government and for the enforcement of Sections 4717.01 to 4717.12, inclusive, of the Revised Code," other sections place limitations on the exercise of that power.

With respect to the making and adopting of such rules, regulations and bylaws, this board is specifically required to comply with the Administrative Procedure Act, Chapter 119 of the Revised Code. Section 4717.06, Revised Code, provides in part as follows:

"The power of the board to make and adopt rules, regulations, and bylaws shall be subject to and in accordance with Sections 119.01 to 119.13, inclusive, of the Revised Code."

The sections last above referred to constitute the Administrative Procedure Act. With respect to changes, either amendments or repeals of rules and regulations of the board, it likewise must comply with Chapter 119, Revised Code. Section 4717.07 of the Revised Code provides in part as follows:

"* * * Changes in the rules and regulations shall be made in accordance with Sections 119.01 to 119.13, inclusive, of the Revised Code."

In the notice of appeal by Golubski and the other appellants from the board to the Common Pleas Court,. it is stated that "This appeal is on the ground that said rule is unreasonable and unlawful in the following respects * * *." Six grounds are set forth, including: (1) Lack of jurisdiction of the subject matter; (2) violation of the provisions of Section 4717.10, exempting customs, etc.; (3) unconstitutional deprivation of the use of property; (4) the regulation is retroactive and contrary to law; (5) it is unreasonable; and (6) it is ambiguous and intended to limit competition.

It seems clear that in the appellants' notice of appeal there was no specific reference to alleged failure on the part of the board to follow the provisions of the Administrative Procedure Act. Does this bar the appellants from raising such alleged il-

legality for the first time in this court? We think that it does not. Section 119.02 of the Revised Code states that the *failure* to comply with procedure "invalidates" the rule.

Section 119.11, Revised Code, dealing with appeals from orders affecting rules, etc., provides in part as follows:

"If the court decides that the procedural requirements in adopting, amending, or rescinding a rule have been complied with by the agency and that the rule as adopted or amended by the agency is reasonable and lawful, or that the rescission of the rule was reasonable and lawful, it shall affirm the order of the agency. If the court decides that the procedural requirements in adopting, amending, or rescinding a rule have not been complied with by the agency, or that the rule as adopted or amended by the agency is unreasonable or unlawful, or that the rescission of the rule was unreasonable or unlawful, it shall declare invalid such order by said agency."

That these questions were determined in the court below is shown by the journal entry which was filed on May 19, 1959, which provides in part as follows:

"* * * the court upon consideration finds that said board complied with procedural requirements as provided by law in the adoption of such rule, that such rule is reasonable and lawful * * *."

This court may, under these circumstances, consider errors in procedure even though there is no specific reference in the notice of appeal from the board.

As before pointed out, there were four separate proposals before the board, the first three being labeled "amendments" and the fourth giving no hint or clue as to which it was. The journal entry makes reference only to the so-called adoption of a rule. Having been thus determined by the court below, we conclude that it may be the subject of an appeal.

The question then presents itself as to whether the board did comply with the requirements of law for the adoption of new rules or for the adoption of an amendment, if in fact it is an amendment.

We have not found anywhere in the record a copy of the rules and regulations of the board either before or after the action here under consideration, but it is apparent that, prior to the present action by the board, there was a Paragraph 4 of Article XV and that now there is a Paragraph 4 of Article XV

and that the language which constitutes the latest version of Paragraph 4 of that Article is materially different from that in the former Paragraph 4 of Article XV. It would appear that Paragraph 4 of Article XV has been amended and that the procedure followed is not in accordance with Chapter 119 of the Revised Code.

It appears to us that Article XV taken as a whole may be a rule, rather than the numbered paragraphs thereof. If so, attempts to amend it should be done by adopting the revised form and repealing the old form in its entirety. We have set forth above the amended form of Paragraph 2 of Article XV which obviously is not a rule at all but merely a heading in a rule. Piecemeal attempts to amend a part of a rule in this manner are illegal.

With reference to rules, regulations and bylaws, there are three main steps which can be taken by an agency, and these are (1) enactment, (2) amendment or (3) rescission. When an amendment is desired, Section 119.03 (D), Revised Code, *supra*, provides in part as follows:

"* * * No rule shall be amended except by a new rule which shall contain the entire rule as amended, and shall repeal the rule amended."

This is an important and a mandatory provision of the Administrative Procedure Act. When the first three so-called amendments, which were given final approval by the board on June 10, 1959, are tested in light of the statute just quoted, all three are found to be deficient for the reason that nowhere in the order was there any rescission of the former rule or regulation, and these amendments are illegal and never became effective.

In our opinion, the so-called regulation against serving food, etc., described as Paragraph 4 of Article XV, must fail (1) because it was in fact an attempted amendment without any repealing clause, (2) as the attempted amendment of former Paragraph 4 of Article XV was defective, there would be two distinct provisions each called Paragraph 4 of Article XV, and (3) there is some indication that Article XV may be a rule and must be taken together for reasons set forth above.

But was the procedure of the board otherwise in accordance with the law? We feel that it was not in several particulars.

1. Although Section 119.03 (C), Revised Code, provides

that any affected person "may present his position, *arguments*, or contentions," the chairman summarily announced at the beginning of the hearing, "And I don't want any arguments."

The chairman attempted to limit the entire testimony of all opponents to 45 minutes, stating:

"Well, I would suggest that each side should take up no more than 45 minutes. * * * I want this understood, too: That I [don't] want two people to take 45 minutes; there might be someone else here that has something to say."

When counsel for appellants demurred to this limitation, the chairman continued as follows:

"Well, we don't want to stay here all night. * * * I would like to state this; You must keep on the subject."

One of the opponents, identified in the record as Mr. Reidy of Lorain, was subjected to vigorous cross-examination as to accounting procedures and as to the cost of coffee and doughnuts furnished, after which the following exchange of words occurred:

"Mr. Reidy: I didn't relinquish the floor. I don't know whether I was gavelled down or not.

"Mr. Ridgley: You were.

"Mr. Reidy: What?

"Mr. Ridgley: You were."

O. R. Woodyard, Jr., of Columbus, whose remarks consumed only slightly over two-thirds of one page in the record was greeted with the following remark by the chairman:

"Mr. Ridgley: Mr. Woodyard, you are going too far back. We left the horse and buggy days, now let's get pertinent. Be specific."

And later, when Woodyard's entire remarks had totalled something less than 300 words, which seemed rather modest compared with the 63 times the chairman interjected some remark in the record, the following colloquy occurred:

"Mr. Woodyard: Mr. Chairman.

"Mr. Ridgley: We have heard from you so many times, let's hear from someone else."

After another witness, Thomas J. Coreno, had testified in opposition, the following exchange of words occurred:

"Mr. Ridgley: Let me ask you this: Would you rather be governed by the health department where you have to take out

restaurant licenses, have to have blood tests and must put in the facilities to handle this food? It could come to that you know?"

"Mr. Coreno: How about the guys that work for me, they want a cup of coffee and I live right up on top of the funeral home * * *.

"Mr. Ridgley: Well, do you run funerals or picnics?

"Mr. Coreno: No, I run funerals. On Sunday, I run picnics."

And after the testimony of another witness, the following remark was made by the chairman:

"Mr. Ridgley: I wasn't threatening you with health department, if that's what you mean."

William P. Rutherford of Columbus, whose remarks occupied about one-half page in the record, attempted to speak a second time and was greeted with the following statement by the chairman:

"Mr. Ridgley: That's enough."

The next to last speech of the chairman, who favored the proposed changes, was approximately 400 words in length.

His final remarks were as follows:

"Gentlemen, it's 4:30, this meeting is adjourned."

As it had been set for 2:30 p. m., presumably the entire hearing affecting approximately 1,200 licensed embalmers and funeral directors consumed about two hours.

The secretary stated the question of adopting the proposed regulation had been submitted as a questionnaire to 1,211 licensees, and that 864 indicated they favored the adoption of the regulation, while, of the 347 others, 274 failed to make any reply and 73 were opposed to any action by the board.

We conclude that the rulings and remarks by the chairman unreasonably restricted interested persons in their exercise of rights under the Administrative Procedure Act. Section 119.03 (C) of the Revised Code.

2. The final order of the board is fatally defective in failing to fix any date when the changes are effective. Under the provisions of Section 119.03, the board in its final adoption order of June 10, 1959, was required to fix the effective date of the proposals adopted. Under the law, this could not be sooner than ten days after filing the proposals with the Secretary of State. Section 119.03 (D) provides in part as follows:

"* * * the agency * * * *shall* designate the effective date thereof which shall not be earlier than the tenth day after said rule * * *." (Emphasis added.)

It will be noted that the General Assembly in placing this duty upon all agencies including appellee used the term, "shall," which is mandatory.

3. The board failed to file a transcript of its record of proceedings and instead filed only a stenographic transcript which was completely lacking in any verification and which included only part of the exhibits offered.

The board apparently considered the "stenographic record of the testimony and rulings on the admissibility (of evidence)," which was required to be made at the expense of the board by Section 119.03, with the attachment of all exhibits offered and admitted, as the equivalent of "a transcript of its record of proceedings relating to said rule," or "the transcript of the record" or "the transcript of the record of proceedings as transmitted by the agency," as provided in Section 119.11, Revised Code. It is upon this "transcript of the record of proceedings," together with the briefs and arguments that the court is to rely in deciding the appeal.

The chairman stated that the matter was under consideration for 18 months and the legal notice published in The Columbus Dispatch on April 16, 1959, presumably was approved as to form and the expenditure authorized by action of the board, and these and other pertinent matters of record are properly included within the phrase, "transcript of the record."

Even more serious is the fact that the "stenographic record of the testimony" bears no certificate of authenticity by anyone and contains only a part of the papers offered in evidence.

Just how, in this state of the record, the court below was able to come to any conclusion based upon the "transcript of the record of proceedings as transmitted by the agency" is difficult to understand when the only record submitted was completely unsigned and unverified and on its face was incomplete as to papers and exhibits admitted into evidence.

For these reasons, we conclude that the first assignment of error is well taken and must be sustained.

As to the second assignment of error, that the court below erred in holding that the rule was reasonable and lawful, the

power of the board is established by Section 4717.04 of the Revised Code. In connection with this case, the pertinent grant by the Legislature is to adopt "standards of service and practice to be followed in * * * funeral directing." The prohibition of serving of food and intoxicating liquor incidental to funeral directing is not, in our opinion, within the statutory grant of power.

It would appear that the functions and duties of protecting the public against the dangers of insanitary conditions in connection with the service of food is fully lodged in the State Department of Health, the state Public Health Council and the various local boards of health.

Reference should be made to Chapter 3701 dealing with the State Department of Health; Chapter 3703, as to duties of the Department of Health with reference to plumbing inspection, except where taken care of adequately by local ordinances; Chapter 3707 dealing with the powers and duties of city or general health districts; and to Chapter 3732, giving to the state Public Health Council authority to "make regulations of general application throughout the state governing food service operations." (Section 3732.02 of Revised Code.)

Section 4717.07 of the Revised Code, requires that embalmers and funeral directors shall register their licenses with the Department of Health. Section 4717.07, Revised Code, provides in part as follows:

"* * * Such license shall be registered by the holder or owner with the department of health. * * *"

As before pointed out, proponents of this rule refer to like rules adopted by health boards of New York and New Jersey and similar provisions in the laws of Pennsylvania. We do not have the full text of such provisions before us, but they would seem to indicate that in such other states it was felt the question was properly one for the state health board or the Legislature.

We conclude that the field of health regulation relating to the service of food is fully occupied by the health agencies above referred to and that so far as state agencies are concerned, the sale of intoxicating liquor is fully regulated by Chapter 4301 of the Revised Code and regulations enacted thereunder.

For the reasons above set forth, we conclude that the second assignment of error is well taken and should be sustained, and,

accordingly, the judgment of the court below must be, and hereby is, reversed and set aside and the cause remanded for further proceedings in accordance with law.

*Judgment reversed.*

DUFFEY, P. J., and DUFFY, J., concur.