In re Appeal from Rules and Regulations of the Division of Social Administration Department of Public Welfare.

(No. 7147—Decided June 25, 1963.)

*Mr. William B. Saxbe*, attorney general, and *Mr. James Dunphy*, for appellant Department of Public Welfare.

*Mr. Warren W. Gibson*, for appellees Helen R. Baughman and others.

BRYANT, J. This is an appeal on questions of law from a judgment of the Court of Common Pleas of Franklin County, Ohio. Helen R. Baughman and others, operators of day care homes and day care centers, had appealed to that court the orders of the Ohio Department of Public Welfare of December 12, 1961, adopting rules and regulations concerning day care centers and day care homes.

The rules and regulations in question were adopted following a public hearing conducted on September 6, 1961, in the state office building in Columbus. The legal notice, published in advance of the hearing one time only in the Columbus Evening Dispatch on August 5, 1961, reads as follows:

"The Ohio Department of Public Welfare will hold public

hearings on proposed rules for certification of day care centers, day care homes and homes and institutions for mentally retarded children on September 6, 1961, in Hearing Room No. 2, State Office Building, Columbus. Proposed rules concern requirements for personnel, physical facilities and care of children. The hearing on rules concerning mentally retarded begins at 10:00 a. m., and the hearing on day care rules begines [begins] at 2:00 p. m.''

As previously indicated, the appeal was filed in the court below by Helen R. Baughman, d. b. a. Aunt Helen's Merry Day Nursery, Cuyahoga Falls, Ohio, and thirty others who operate nurseries of different kinds located in Cleveland, Columbus, Cincinnati, Akron, Dayton and other Ohio cities. Several such operators since have withdrawn but a substantial number remain in the case.

The grounds for appeal to the court below are as follows:

''A. Said Division does not have the authority to promulgate rules and regulations covering the field of private day care nurseries, or in the event that said Division does have authority, has greatly exceeded that authority.

''B. The procedure used for the adopting of said rules and regulations was not in accordance with the Revised Code of the state of Ohio.

''C. The rules and regulations have no relationship to public health, safety, morals or welfare.

''D. The rules and regulations are discriminatory, vague, constitute an invasion of privacy, a taking of property without due process of law and are in violation of the Constitution of the state of Ohio and the Constitution of the United States.

''E. The rules and regulations contain 'recommendations' which material is redundant in surplusage unless the same are part of the rules and regulations.''

The matter was extensively briefed and submitted to the court below upon the transcript furnished by the Department of Public Welfare including Appendix 1 through Appendix 14 and including the various orders made by the department, the transcript of the hearing conducted September 6, 1961, proof of publication of the legal notice, and various other exhibits, attachments, papers and pamphlets. Upon consideration of the foregoing, the court below handed down a fourteen-page de-

cision under date of June 19, 1962. In the course of that decision it was stated that in such an appeal "the basic issues presented are (1) whether the procedural requirements of the Administrative Procedure Act as to the adoption of rules as enumerated in Section 119.03, Revised Code, were complied with, and (2) whether such rules are unlawful or unreasonable."

At the outset the court below rejected the contention that the appellants were not shown to be adversely affected. The decision held the department is an "agency" as defined in Section 119.01, Revised Code. The court then gave consideration to the objections relating to procedural steps taken and found and determined that the department had failed to comply with the provision in Section 119.03, Revised Code, requiring each agency to adopt a rule to be followed in giving public notice as to the adoption, etc., of rules. The court rejected the contention that the presence of appellants' counsel effected a waiver of any failure to comply with public notice. The court below held in effect that the authority of the Department of Public Welfare through the Division of Social Administration as provided in Section 5103.03, Revised Code, was limited to beneficial and correctional institutions and that day care centers were neither beneficial nor correctional institutions.

There were other holdings in which the court gave its approval to the record as made up by the department concluding with the decision "that the procedural requirements in adopting the rules here in question have not been complied with by the agency and thus are invalid, and that such rules as adopted by the agency also are unlawful to the extent that they purport to regulate and require a certification as a condition precedent for operation by non-benevolent or non-correctional institutions or associations."

From that decision the Department of Public Welfare has appealed to this court and has assigned four errors as follows:

"1. The Common Pleas Court erred in holding that the department did not comply with the procedural requirements of Section 119.03, Revised Code.

"2. The Common Pleas Court erred in holding that the Division of Social Administration lacked rule-making and certification powers over private day-care centers.

"3. The Common Pleas Court erred in holding that the day-

care operators did not operate either benevolent or correctional facilities.

"4. The Common Pleas Court erred in holding that the attempted delegation of rule-making authority in Section 5103.03, Revised Code, was due to the absence of standards, an unlawful delegation of legislative authority."

Under the first assignment of error, namely, the alleged failure of the Department of Public Welfare to comply with the provisions of Chapter 119, Revised Code, the Administrative Procedure Act, and in particular Section 119.03, several claimed errors have been urged.

We find ourselves in agreement with the court below in rejecting the contention on behalf of the Department of Public Welfare that appellants in the court below, namely, the various operators of day care homes and day care centers, are not by the record shown to be adversely affected within the meaning of the terms as used in Section 119.11, Revised Code, by the orders of the department in adopting the various rules.

As we view this record, the rules are exclusively directed at such operators and there can be no serious question that the rules, in previously existing form, placed a burden on such operators. The view was expressed by some of the operators or their representatives that the rules might well operate so adversely as to put them out of business.

Nor is this conclusion changed by the fact that each operator also may attack the rules if he at sometime in the future should be the defendant in an adjudication hearing for some alleged infraction.

We also find ourselves in agreement with the court below in holding that appellants therein were not prejudiced by the alleged failure of the hearing officer who conducted the proceedings on September 6, 1961, to administer an oath to each and every person who even asked a question at the hearing. Likewise we agree that no prejudice to those appellants was shown by the filing of a supplement for minor correction where a part of a sentence inadvertently was left out of the rules as filed with the Secretary of State.

There is, however, another challenge to the validity of these proceedings under the provisions of Chapter 119, Revised Code, which requires serious consideration.

Appendix 7, filed with the Secretary of State on August 4, 1961, at the top of the first of twenty-three pages bears a heading reading as follows: "Proposed Rules for Certification of Day Care Centers Department of Public Welfare Division of Social Administration August, 1961."

Immediately under this heading appears a provision relating to the notice to be given in advance of the hearing, this provision with the caption and heading reads as follows:

"Adoption of Rules

"Rule 1. Notification of Adoption of Rules

"Not less than 30 days prior to a public hearing at which adoption, amendment or recision [rescission] of rules shall be considered, the Division shall cause to be published in a daily newspaper of general circulation a notice of the date, time and place of the hearing; a statement giving the subject matter included in the rule: and a statement of the Division's intention to consider adopting, amending or rescinding a rule. A copy of the proposed new rule or amendment or recision [rescission] of a rule shall be mailed not less than 30 days prior to such hearing to the operator of each day care center which has a certificate of approval in effect or which has an application for such a certificate pending."

The court below held in effect that the department had failed in advance to adopt a rule setting forth in detail the steps which should be taken by it in giving public notice of the department's intention to adopt, amend or rescind a rule or rules. The reason was that the action taken by the department looking to the eventual adoption of "Proposed Rules for Certification of Day Care Centers" on August 4, 1961, when this document was filed with the Secretary of State, was tentative and preliminary and in no sense final, and the inclusion therein of a proposed rule governing notification of adoption of rules was also tentative and preliminary and not final.

The same situation was true on September 6, 1961, when the public hearing took place. This is for the reason that the Administrative Procedure Act (Chapter 119, Revised Code) in clear and unmistakable terms makes it the first duty of any agency of state government intending to adopt, amend or rescind any rule or rules to first adopt a rule as to notice. Section 119.03 (A) (3), Revised Code, provides in part as follows:

"* * * *Each agency shall adopt a rule setting forth in detail the method which such agency shall follow in giving public notice as to the adoption, amendment, or rescission of rules.*" (Emphasis added.)

It has been urged that the department saved money by proceeding as it did and that to have proceeded separately first to adopt a rule as to giving public notice, and then proceeding under it, would have consumed additional time.

The mere statement of these excuses provides a complete answer thereto. When an agency of government sets out to adopt rules, which may have the force and effect of law, it has a clear mandatory duty to comply with all statutory provisions with respect to the exercise of the rule-making power. See *Golubski* v. *Board of Embalmers & Funeral Directors of Ohio* (1961), 114 Ohio App., 111.

If there were any doubt about it, the General Assembly of Ohio has removed it and has specifically provided that rules adopted without complying with Chapter 119, Revised Code, are completely invalid. Section 119.02, Revised Code, provides as follows:

"* * * Unless otherwise specifically provided by law, the failure of any agency to comply with such procedure shall invalidate any rule or amendment adopted, or the rescission of any rule."

We must conclude that the provisions of Sections 119.02 and 119.03, Revised Code, are mandatory; that there was a failure on the part of the agency, previous to initiating or taking first steps toward adopting child care rules, to adopt a rule as to giving notice; and that, therefore, the orders identified as Appendix 1, Appendix 2, Appendix 3 and Appendix 4 are invalid.

The record in this case is somewhat confusing because in some places it would appear that the appellant in this court, appellee below, is the Department of Public Welfare, Division of Social Administration, while elsewhere reference is made only to "Ohio Department of Public Welfare." This is due in part to the way the various statutes are drawn conferring specific powers on bureaus and divisions. We note however that the Director of the Department of Public Welfare is the execu-

tive head of the entire department, Section 5101.02, Revised Code, providing in part as follows:

"The Director of Public Welfare is the executive head of the Department of Public Welfare. All duties conferred on the various divisions and institutions of the department by law or by order of the director shall be performed under such rules and regulations as he prescribes, and shall be under his control."

Numerous other questions have been discussed or argued in the briefs both in this court and in the court below. Some of them were decided by the court below, others were not. If our conclusions are correct, the entire procedure must be started anew and some of the questions may become moot as will all of them if no new steps be initiated.

For the reasons above set forth, we conclude that no prejudicial error has been shown and that the judgment of the court below should be, and hereby is, affirmed.

*Judgment affirmed.*

DUFFEY and TROOP, JJ., concur.

DUFFEY, J., concurring. I concur in the principal opinion on the failure to adopt a public notice rule. That is sufficient to invalidate the "day care" rules. However, since the matter must again be considered by the agency, I believe two other points should be noted.

Even if the purported public notice rule had been properly adopted prior to the "day care" rules, in my opinion the specific rule as drafted here would not be valid. Any public notice rule must, of course, meet the three specific requirements stated in Section 119.03 (A) (1), (2) and (3), Revised Code. However, it must also meet the basic requirement of reasonableness. Paragraph (A) of Section 119.03, Revised Code, provides: "*Reasonable* public notice shall be given * * *." (Emphasis added.) The purported rule here makes public notice of the hearing almost infinitesimal. It calls for *a* notice in *a* daily newspaper of general circulation. Literally, this requires only a single publication in only one such newspaper anywhere in

the state. A different newspaper could be chosen on each occasion since no particular one is specified, nor are any criteria or standards for selection given other than it be a daily of general circulation. This is in the face of the fact that the agency here intends to adopt rules which will substantially affect not only a large number of licensees throughout the entire state but also will affect the interests of many thousands of persons who use the licensees' facilities.

The second portion of the purported rule requires the mailing to operators and applicants of a copy of the proposed rule not less than 30 days prior to the hearing. It does *not* require that such persons be notified of the time, place and date of the hearing, nor even that the agency intends to consider adoption. It does *not* even set an outer limit on the time for mailing. Apparently even the licensees are expected to discover what particular newspaper was selected and on what date the single publication was made in order to find out about the hearing. In my opinion, these provisions for notice are not merely minimal. They are unreasonable.

As to the actual notice published in this case, it purports to fulfill the alternative requirement of Section 119.03 (A) (2), Revised Code, *i. e.*, that the notice include "a general statement of the subject matter to which such proposed rule relates." Suffice it to observe that a reading of the notice as quoted in the principal opinion shows that the concept of a general statement was stretched to the breaking point.

The state has also suggested an inconsistency in the provisions of Section 119.03 (A), Revised Code. Read by itself, it appears to require public notice to be made as provided by rule, and at the same time requires public notice as to the adoption of any rule. This, of course, would be physically impossible. While we do not pass on this problem at this time, attention should be directed to the provisions of Sections 119.03 (F) and 119.04, Revised Code.

Modern government has witnessed the dramatic shift of much of the development of legal controls from the Legislature to agencies. The Administrative Procedure Act is a legislative response to that development. It seeks not only to regularize agency procedures but to provide adequate protection for the public's right to know of, and either support or protest against,

proposed controls of private activity. The right to know and the right to be heard are fundamental to democracy. It is most disconcerting to encounter an attitude of mind so evident in this case which grudgingly accepts and only minimally complies with legal requirements designed to insure the workings of democracy.